**FEDERAL–MOGUL CORPORATION,**
Plaintiff,

**The Torrington Company,**
Plaintiff–Intervenor,

v.

**UNITED STATES, Defendant,**

SKF USA Inc. and SKF GmbH; GMN Georg Muller Nurnberg AG; INA Walzlager Schaeffler KG and INA Bearing Company, Inc.; NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH; FAG Kugelfischer Georg Schafer KGaA; Pratt & Whitney Canada Inc., Defendant–Intervenors.

No. 91–07–00533.

United States Court of
International Trade.

June 4, 1993.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, Washington, DC, for plaintiff Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., William A. Fennell, Wesley K. Caine, Christopher J. Callahan, Myron A. Brilliant and Amy S. Dwyer, Washington, DC, for plaintiff-intervenor The Torrington Co.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Liti-

gation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel: John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert, Stephen J. Claeys, Douglas S. Cohen and Emily Randall, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Thomas J. Trendl and Juliana M. Cofrancesco, Washington, DC, for defendant-intervenors SKF USA Inc. and SKF GmbH.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell, Philip S. Gallas, Andrew B. Schroth and Matthew L. Pascocello, New York City, for defendant-intervenor GMN Georg Muller Nurnberg AG.

Arent Fox Kintner Plotkin & Kahn, Stephen L. Gibson, Washington, DC, for defendant-intervenors INA Walzlager Schaeffler KG and INA Bearing Comp., Inc.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, Chicago, IL, for defendant-intervenors NTN Bearing Corp. of America and NTN Kugellagerfabrik (Deutschland) GmbH.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman, David L. Simon, Andrew B. Schroth and Matthew L. Pascocello, New York City, for defendant-intervenor FAG Kugelfischer Georg Schafer KGaA.

Donohue and Donohue, William J. Phelan, Stamford, CT, for defendant-intervenor Pratt & Whitney Canada Inc.

## *OPINION*

TSOUCALAS, Judge:

Plaintiff, Federal–Mogul Corporation ("Federal–Mogul"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from the Federal Republic of Germany. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Ger-* *many; Final Results of Antidumping Duty Administrative Review ("Final Results"),* 56 Fed.Reg. 31,692 (1991).

### *Background*

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings, cylindrical roller bearings, spherical plain bearings and parts thereof from the Federal Republic of Germany. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews,* 55 Fed. Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 56 Fed.Reg. 11,200 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results,* 56 Fed.Reg. 31,692.

Federal–Mogul has challenged the following actions by the ITA alleging that these actions were unsupported by substantial evidence on the administrative record and not in accordance with law: the ITA's (1) use of a methodology for adjusting United States price ("USP") and Foreign Market Value ("FMV") for Germany's value added tax ("VAT") that failed to measure the tax incidence or "pass through" of the tax to the consumer in the home market, that granted a circumstance of sale ("COS") adjustment to FMV to achieve tax neutrality, the incorrect calculation of the tax base for U.S. sales and the failure to impose a cap on the VAT adjustment to USP; (2) method of calculating cash deposit rates for estimated duties; (3) failure to adjust home market selling expenses for delayed payment of the expenses; (4) adjustment of constructed value for differences in COS; (5) treatment of U.S. sales commissions; (6) failure to deduct antidumping duty related legal expenses from

the exporter's sales price ("ESP"); (7) failure to deduct estimated antidumping duties from USP; (8) use of the "all others" rate calculated during this administrative review as the new cash deposit rate for companies not examined during this review; and (9) alleged computer errors in regard to SKF GmbH and INA Walzlager Schaeffler KG's dumping margins. *Federal–Mogul Corporation's Brief in Support of its Motion for Judgment on the Agency Record ("Federal–Mogul's Brief")* at 5–76.

## Discussion

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. *Treatment of VAT*

■ Federal–Mogul challenges the ITA's use of a methodology for adjusting USP and FMV for Germany's VAT that failed to measure the tax incidence or "pass through" of the tax to the consumer in the home market, that granted a COS adjustment to FMV to achieve tax neutrality, the incorrect calculation of the tax base for U.S. sales and the failure to impose a cap on the VAT adjustment to USP. *Federal–Mogul's Brief* at 5–43.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Memorandum")* at 4–56.

Defendant-intervenors, SKF USA Inc. and SKF GmbH ("SKF"), NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH ("NTN"), GMN Georg Muller Nurnberg AG ("GMN") and FAG Kugelfischer Georg Schafer KGaA ("FAG"), essentially support defendant's arguments on these issues. *Opposition of SKF USA Inc. and SKF GmbH to Federal–Mogul's Motion for Judgment on the Agency Record ("SKF's Opposition")* at 5–10; *Response Brief of Defendant-intervenor NTN Bearing Corporation of America and NTN Kugellagerfrabrik (Deutschland) GmbH ("NTN's Response")* at 9–23; *Memorandum of Defendant-intervenor GMN Georg Muller Nurnberg AG in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("GMN's Memorandum")* at 8–12; *Memorandum of Defendant-intervenor FAG Kugelfischer Georg Schafer KGaA in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("FAG's Memorandum")* at 8–12.

For a more detailed discussion of Federal–Mogul and defendant's arguments on these issues, see this Court's decision in *Federal–Mogul Corp. v. United States,* 17 CIT ——, —— – ——, 813 F.Supp. 856, 860–66 (1993).

This Court has fully addressed these arguments and adheres to its decision on these issues in *Federal–Mogul,* 17 CIT at —— – ——, —— – ——, 813 F.Supp. at 862–63, 864–66. This Court finds that the ITA's determination that 19 U.S.C. § 1677a(d)(1)(C) does not require the ITA to conduct an analysis of tax incidence in the German anti-friction bearings market and that the ITA's use of the net USP including profit as the tax base is reasonable and supported by law. In addition, this Court remands this case to the ITA to allow the ITA to add the full amount of VAT paid on home market sales to FMV without adjustment and for the ITA to examine the administrative record to determine the exact monetary amount of VAT paid on each sale in the home market and make sure that the amount added to the comparable USP sale is less than or equal to this amount in conformity with this Court's opinion in *Federal–Mogul,* 17 CIT at —— – ——, —— – ——, 813 F.Supp. at 862–63, 865–66.

### 2. Calculation of Cash Deposit Rates

■ In this administrative review, the ITA used two different methodologies for the actual calculation of dumping margins in cases where ESP sales were used: one for assessing duties on entries covered by the review, and the other for setting the cash deposit rate on future entries of the subject merchandise. *Final Results*, 56 Fed.Reg. at 31,-693–95, 31,698–702. To calculate the assessment rate for ESP sales, the ITA "divide[d] the total PUDD [potential uncollected dumping duties—calculated as the total difference between foreign market value and U.S. price for an exporter] for the reviewed sales by the *total entered value* of those reviewed sales...." *Final Results*, 56 Fed.Reg. at 31,698–99 (emphasis added). To calculate the estimated cash deposit rate for ESP sales, the ITA "divided the total PUDD for each exporter by the *total net U.S. price* for that exporter's sales...." *Id.* at 31,699 (emphasis added).

Federal–Mogul argues that the ITA's use of a methodology which results in an estimated cash deposit rate different from the assessment duty rate was unsupported by substantial evidence on the record and not in accordance with law. *Federal–Mogul's Brief* at 61–68.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum* at 79–86. In addition, defendant argues that this issue is moot because of the publication of superseding cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 28,360 (1992). *Defendant's Memorandum* at 76–79.

Defendant-intervenors SKF, NTN, GMN and FAG essentially support defendant's arguments on this issue. *SKF's Opposition* at 25–28; *NTN's Response* at 29–33; *GMN's Memorandum* at 26–32; *FAG's Memorandum* at 26–32.

For a more detailed discussion of Federal–Mogul and defendant's arguments on this issue, see this Court's decision in *Federal–Mogul*, 17 CIT at ———–———, 813 F.Supp. at 866–67.

The Court agrees with the defendant that this issue is now moot. However, the Court directs the defendant to this Court's decision on this issue in *Federal–Mogul*, 17 CIT at ———–———, 813 F.Supp. at 867–68.

### 3. Delayed Payment of Home Market Selling Expenses

■ Federal–Mogul argues that, in instances where the ITA granted a respondent a COS adjustment for expenses related to sales of the subject merchandise in the home market that were made on a delayed payment basis, the ITA should be required to grant an adjustment in the amount of the expense "paid out minus the savings realized by paying that amount sometime after the obligation to pay was incurred." *Federal–Mogul's Brief* at 45. Federal–Mogul states that the ITA addressed only discounts and rebates and not other COS adjustments when discussing Federal–Mogul's arguments on this issue in the Final Results, that the ITA's arguments in regard to discounts and rebates make no sense and that the ITA's attempts to distinguish adjustments for credit and inventory carrying costs as opposed to adjustments for other sales expenses have no support. *Id.* at 44–49.

In the Final Results, the ITA stated:

As the Department stated in Color Television Receivers, Except Video Monitors, From Taiwan, 55 FR 47093, 47094 (1990), any savings resulting from the deferred payment of a discount or rebate would have been taken into account by the seller in setting the terms of the discount or rebate. Therefore, it is unnecessary to adjust the "actual cost" to the seller. This is in contrast to credit costs or inventory carrying costs, which are imputed costs, where the seller does not know how long it will take for a customer to pay or how long he will store merchandise before it is sold.

*Final Results*, 56 Fed.Reg. at 31,718.

Defendant argues that the above analysis "is clearly applicable also to other expenses paid in the home market because they are likely to already incorporate a factor for de-

layed payment." *Defendant's Memorandum* at 57. Defendant argues that the ITA should be allowed to follow its past practice of making adjustments to FMV for selling expenses as recorded in a respondent's financial accounts. *Id.* Defendant also argues that it would be extremely burdensome to require the ITA to make these delayed payment adjustments and that, in fairness, these types of adjustments would also have to be made for USP selling expenses, further increasing the burden on the ITA. *Id.*

Defendant-intervenors SKF, NTN, GMN and FAG essentially support defendant's arguments on this issue. *SKF's Opposition* at 10–15; *NTN's Response* at 22–23; *GMN's Memorandum* at 13–16; *FAG's Memorandum* at 13–16.

This Court has fully addressed these arguments and adheres to its decision on this issue in *Federal–Mogul*, 17 CIT at ――――, 813 F.Supp. at 869–70, and finds that based on the administrative record in this case, the ITA's failure to address Federal–Mogul's arguments in regard to and refusal to factor in any savings attributable to the deferred payment of sales expenses when making COS adjustments to FMV was not supported by substantial evidence on the record. As a result, this Court remands this issue to the ITA to explain why, in cases where there was a deferred payment of any sales expense in the home market, COS adjustments to FMV should not be adjusted for the savings realized by paying that amount sometime after the obligation to pay was assumed. The ITA is directed to explain why any savings resulting from deferred payment of sales expenses should or should not be factored into the calculation of each type of COS adjustment made to FMV in this review.

4. *Circumstance of Sale Adjustment to Constructed Value*

Federal–Mogul alleges that the ITA made a COS adjustment to constructed value pursuant to 19 U.S.C. § 1677b(a)(4)(B) (1988) which removed more in selling expenses than had originally been included in the calculation of constructed value. *Federal–Mogul's Brief* at 49–51. Federal–Mogul presents *no*

evidence that the ITA has in fact done so. Therefore, this Court need not reach this issue. *See Asociacion Colombiana de Exportadores v. United States*, 13 CIT 13, 19 n. 8, 704 F.Supp. 1114, 1120 n. 8 (1989), *aff'd on other grounds*, 901 F.2d 1089 (Fed.Cir.1990), *cert. denied*, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990).

5. *Commission Offset Adjustment to FMV*

■ Federal–Mogul challenges the ITA's implementation of 19 C.F.R. § 353.56(b)(1) (1991) which sets out a special rule allowing an adjustment to FMV when a respondent pays sales commissions on sales in the United States but pays no commissions on sales in the home market. Under such circumstances, the ITA will make an adjustment to FMV for home market indirect selling expenses up to the level of the commission expense removed from USP.

Federal–Mogul challenges the manner in which the ITA quantifies this adjustment to FMV in cases where FMV is compared to ESP. Specifically, Federal–Mogul believes that the ITA's method double-counts the portion of the U.S. commission which covers directly related selling expenses which have already been adjusted for in the home market pursuant to 19 C.F.R. § 353.56(a) (1991). In other words, Federal–Mogul alleges that the ITA fails to break out the direct and indirect components of the U.S. commissions on ESP sales and adjust FMV only up to the amount of the indirect component. As a result, when the ITA deducts the full amount of the U.S. commission from FMV indirect expenses, the ITA is adjusting for direct expenses such as advertising which it has already adjusted for. *Federal–Mogul's Brief* at 51–54.

For a more detailed discussion of Federal–Mogul and defendant's arguments on this issue, see this Court's decision in *Federal–Mogul*, 17 CIT at ―― ――, 813 F.Supp. at 870–71.

This Court has fully addressed these arguments and adheres to its decision on this issue in *Federal–Mogul*, 17 CIT at ―― ――, 813 F.Supp. at 871, and finds that in the absence of explicit statutory guidance,

the ITA's interpretation of the statute it is charged with administering should be given deference. *Melamine Chems., Inc. v. United States,* 732 F.2d 924, 928 (Fed.Cir.1984). Therefore, this Court affirms the ITA's adjustment to FMV for U.S. sales commissions paid on ESP sales.

### 6. *Antidumping Duty Legal Expenses*

■ Federal–Mogul argues that 19 U.S.C. § 1677a(e)(2) (1988) requires the ITA to deduct respondent's antidumping duty related legal fees from ESP as "expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise." Federal–Mogul also argues that this court's holdings in *Daewoo Elecs. Co. v. United States,* 13 CIT 253, 269–70, 712 F.Supp. 931, 947 (1989), and *Zenith Elecs. Corp. v. United States,* 15 CIT 394, ——, 770 F.Supp. 648, 651 (1991), were wrongly decided. *Federal–Mogul's Brief* at 54–58.

This Court adheres to its decision on this issue in *Federal–Mogul,* 17 CIT at ——, 813 F.Supp. at 871–72, and finds that the ITA is not required to make an adjustment to ESP for antidumping duty related legal expenses.

### 7. *Deduction of Antidumping Duties from USP*

■ Federal–Mogul argues that 19 U.S.C. § 1677a(d)(2)(A) (1988) requires the ITA to deduct cash deposits of estimated antidumping duties made by respondents during the period of review. 19 U.S.C. § 1677a(d)(2)(A) states that the ITA must deduct from USP

the amount, if any, included in such price, attributable to any additional costs, charges, and expenses, *and United States import duties,* incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States. . . .

(Emphasis added); *Federal–Mogul's Brief* at 58–61.

Defendant argues that 19 U.S.C. § 1677a(d)(2)(A) requires the deduction of normal import duties and that cash deposits of estimated antidumping duties are not normal import duties, that deposits of estimated

antidumping duties are not selling expenses that should be deducted and that not deducting estimated antidumping duties from USP has been the ITA's consistent administrative practice. *Defendant's Memorandum* at 66–69.

SKF, NTN, GMN and FAG agree with the ITA's arguments. *SKF's Opposition* at 24–25; *NTN's Response* at 27–29; *GMN's Memorandum* at 23–26; *FAG's Memorandum* at 23–26.

■ This Court has fully addressed these arguments and adheres to its decision on this issue in *Federal–Mogul,* 17 CIT at ——, 813 F.Supp. at 872 and finds that 19 U.S.C. § 1677a(d)(2)(A) requires the ITA to deduct estimated import duties from USP only to the extent that the actual duties to be collected can be determined at the time the ITA is calculating the current dumping margins. Therefore, the ITA was correct to deduct from USP only deposits of the actual normal import duties owed which can be accurately determined, and the ITA was correct not to deduct cash deposits of estimated antidumping duties, which may not bear any relationship to the actual dumping duties owed, from USP.

### 8. *"All Others" Rate*

■ In this administrative review, for manufacturers and exporters who were not investigated in the less-than-fair-value ("LTFV") investigation and therefore received the LTFV "all others" cash deposit rate and were also not investigated during this administrative review, the ITA used the new "all others" rate calculated in this administrative review as the new cash deposit rate. *Final Results,* 56 Fed.Reg. at 31,694.

Federal–Mogul argues that the ITA's use of the "all others" rate calculated during this administrative review as a new cash deposit rate for companies previously subject to the LTFV "all others" rate is not in accordance with 19 U.S.C. § 1675(a)(2) (1988) and 19 C.F.R. § 353.22(e)(1) (1991). *Federal–Mogul's Brief* at 68–73.

Defendant argues that this Court should refuse to reach the issue of the ITA's use of the new "all others" rate as the cash deposit

rate for companies which were not subject to review because publication of new cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 28,360 (1992), has made this issue moot. *Defendant's Memorandum* at 76–79.

Defendant argues that if the Court chooses to address the merits of Federal–Mogul's claim, its use of the new "all others" rate was supported by substantial evidence and in accordance with law. *Id.* at 86–92.

For a more detailed discussion of the parties arguments on this issue, see this Court's decision in *Federal–Mogul Corp. v. United States,* 17 CIT ——, Slip Op. 93–83 (May 25, 1993).

This Court adheres to its decision in *Federal Mogul,* 17 CIT ——, and finds that the ITA's use of the new "all others" rate calculated during this administrative review as the cash deposit rate for unreviewed companies which received the "all others" rate during the LTFV investigation is not in accordance with law. This case is remanded to the ITA to allow the ITA to reinstate the "all others" cash deposit rate from the LTFV investigation for entries made between May 1, 1992 and June 23, 1992, which have as yet not become subject to assessment pursuant to a subsequent administrative review.

### 9. *Computer Errors in SKF and INA's Dumping Margins*

Federal–Mogul alleges that the ITA committed three inadvertent computer programming errors: (1) failure to deduct the costs of additional packing materials and additional packing labor incurred in the United States for SKF's exporter's sales price transactions, (2) failure to use revised total general expenses when calculating INA's home market cost of production, and (3) failure to include profit and packing costs in calculating INA's constructed value. *Federal–Mogul's Brief* at 73–76.

Defendant agrees with Federal–Mogul that the ITA did commit the alleged errors and requests this Court to remand these issues to the ITA for correction when the Court remands this case for final disposition. *Defendant's Memorandum* at 92–93.

SKF has no objection to a remand for correction of the failure to deduct the costs of additional packing materials and additional packing labor incurred in the United States for SKF's exporter's sales price transactions. *SKF's Opposition* at 29.

Since this Court is remanding this case to the ITA to correct other errors in the Final Results, there is no reason to delay remand in regard to these computer errors. Therefore, the Court remands these issues for the ITA to correct the computer programming errors in regard to SKF and INA's dumping margins.

### Conclusion

In accordance with the foregoing opinion, this case is remanded to the ITA to examine the administrative record to determine the exact monetary amount of VAT paid on each sale in the home market and make sure that the amount added to the comparable USP sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to this amount, to add the full amount of VAT paid in the home market to FMV without adjustment, to explain why any savings resulting from deferred payment of sales expenses should or should not be factored into the calculation of each type of COS adjustment made to FMV in this review, to reinstate the less-than-fair-value "all others" rate for entries made between May 1, 1992 and June 23, 1992, which have as yet not become subject to a subsequent administrative review, and to correct the computer errors in regard to SKF and INA's dumping margins. ITA's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

### *ORDER*

This case having been duly submitted for decision and the Court, after due delibera-

tion, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration ("ITA"), to examine the administrative record to determine the exact monetary amount of VAT paid on each sale in the home market and make sure that the amount added to the comparable USP sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to this amount, to add the full amount of VAT paid in the home market to FMV without adjustment, to explain why any savings resulting from deferred payment of sales expenses should or should not be factored into the calculation of each type of COS adjustment made to FMV in this review, to reinstate the less-than-fair-value "all others" rate for entries made between May 1, 1992 and June 23, 1992, which have as yet not become subject to a subsequent administrative review, and to correct the computer errors in regard to SKF and INA's dumping margins; and it is further

**ORDERED** that the ITA's determination is affirmed in all other respects; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date this opinion is entered; comments or responses by the parties to the remand results are due within thirty (30) days thereafter; and any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.