## FEDERAL–MOGUL CORPORATION, Plaintiff,

### The Torrington Company, Plaintiff–Intervenor,

v.

### UNITED STATES, Defendant,

SKF USA Inc. and SKF GmbH; GMN Georg Muller Nurnberg AG; INA Walzlager Schaeffler KG and INA Bearing Company, Inc.; NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH; FAG Kugelfischer Georg Schafer KGaA; Pratt & Whitney Canada Inc., Defendants–Intervenors.

Court No. 91–07–00533.
Slip Op. 93–221.

United States Court of International Trade.

Nov. 30, 1993.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, Washington, DC, for plaintiff Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., William A. Fennell, Wesley K. Caine, Christopher J. Callahan, Myron A. Brilliant and Amy S. Dwyer, Washington, DC, for plaintiff-intervenor Torrington Co.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel; John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert, Stephen J. Claeys, Douglas S. Cohen and Emily Randall, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Thomas J. Trendl and Juliana M. Cofrancesco, Washington, DC, for defendants-intervenors SKF USA Inc. and SKF GmbH.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, Chicago, IL, for defendant-intervenor NTN Bearing Corp. of America and NTN Kugellagerfabrik (Deutschland) GmbH.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell, Philip S. Gallas, Andrew B. Schroth and Matthew L. Pascocello, New York City, for defendant-intervenor GMN Georg Muller Nurnberg AG.

Arent Fox Kintner Plotkin & Kahn, Stephen L. Gibson, Washington, DC, for defendant-intervenor INA Walzlager Schaeffler KG and INA Bearing Co., Inc.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman, David L. Simon, Andrew B. Schroth and Matthew L. Pascocello, New York City, for defendant-intervenor FAG Kugelfischer Georg Schafer KGaA.

Donohue and Donohue, William J. Phelan, Stamford, CT, for defendant-intervenor Pratt & Whitney Canada Inc.

## OPINION

TSOUCALAS, Judge:

Plaintiff Federal–Mogul Corporation ("Federal–Mogul") commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from the Federal Republic of Germany. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty*

*Administrative Review* ("*Final Results* "), 56 Fed.Reg. 31,692 (1991).·

### Background

In *Federal–Mogul Corp. v. United States,* 17 CIT ——, ——, 824 F.Supp. 230, 237 (1993), this Court remanded this case to the ITA to

> examine the administrative record to determine the exact monetary amount of [value added tax] paid on each sale in the home market and make sure that the amount added to the comparable [United States price] sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to this amount, to add the full amount of [value added tax] paid in the home market to [foreign market value] without adjustment, to explain why any savings resulting from deferred payment of sales expenses should or should not be factored into the calculation of each type of [circumstance of sale] adjustment made to [foreign market value] in this review, to reinstate the less-than-fair-value "all others" rate for entries made between May 1, 1992 and June 23, 1992, which have as yet not become subject to a subsequent administrative review, and to correct the computer errors in regard to SKF and INA's dumping margins.

On September 2, 1993, the ITA filed with this Court its Final Results of Redetermination Pursuant to Court Remand, *Federal–Mogul Corporation v. United States* Slip Op. 93–96 (June 4, 1993) ("*Remand Results* "). In its Remand Results, the ITA: for certain respondents added to foreign market value ("FMV") the amount of value added tax ("VAT") paid on sales of the subject merchandise in the home market without adjustment and also added the exact same amount to United States price ("USP"); explained in greater detail why savings realized from delayed payment of home market sales expenses should not be factored into the calculation of circumstance of sale ("COS") adjustments to FMV; reinstated the less-than-fair-value ("LTFV") "all others" rate for entries made between May 1, 1992 and June 23, 1992, which have as yet not become subject to a subsequent administrative review; and corrected errors in the final margin comput-

er programs for SKF USA Inc. and SKF GmbH ("SKF") and INA Walzlager Schaeffler KG and INA Bearing Company, Inc. ("INA"). *Remand Results* at 2–13.

### Discussion

▋ ITA's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the. record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 ·CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

#### 1. *Value Added Tax*

Federal–Mogul challenges the ITA's treatment ·of the German VAT. *Federal–Mogul Corporation's .Comments Concerning Defendant's Final Results of Redetermination Pursuant to Court Remand* ("*Federal–Mogul's Comments* ") at 3–23.

In its Remand Results, as instructed by this Court, the ITA ˙added the amount of VAT paid on each sale in the home market to FMV without making a COS adjustment to this amount. In addition and on its own initiative, the ITA added the exact same amount to USP instead of following its usual practice of applying the *ad. valorem* VAT rate to the net USP after all adjustments had been made and adding this amount to USP. *Remand Results* at 2–5; *see Final Results,* 56 Fed.Reg. at 31,729. ITA's rationale for its new approach is based on its interpretation of the United States Court of Appeals for the Federal Circuit's recent decision on the VAT issue in *Zenith Elecs. Corp. v. United States,* 988 F.2d 1573, 1580–82 (Fed.Cir. 1993). · *Remand Results* at 2. ITA ˙implemented its stated methodology only for respondents whose dumping margins were being recalculated on remand for some other reason and for respondents who did not participate in the Second Administrative Review because the ITA's new methodology only changes cash deposit rates which are no

longer in effect for all respondents. *Id.* at 4–5.

Defendant argues that the ITA's new VAT methodology is responsive to this Court's remand order. Specifically, the defendant argues that this new methodology adds the full amount of VAT to FMV, ensures that the tax adjustment made to USP is not greater than the amount of VAT added to FMV and does not make a COS adjustment to the amount of VAT added to FMV. *Remand Results* at 2–5; *Defendant's Rebuttal to Federal–Mogul Corporation's Comments Concerning Defendant's Final Results of Redetermination Pursuant to Court Order ("Defendant's Comments")* at 2.

For a detailed discussion of Federal–Mogul and defendant's arguments on this issue, see this Court's decision in *Federal–Mogul Corp. v. United States,* 17 CIT ——, ——, 834 F.Supp. 1391, 1394–96 (1993).

Defendant requests this Court to reconsider its recent decisions in *Federal–Mogul Corp. v. United States,* 17 CIT ——, 834 F.Supp. 1391, and *Torrington Co. v. United States,* 17 CIT ——, 834 F.Supp. 1384 (1993), which found that the ITA's new VAT methodology is not in accordance with law.

Defendant-intervenors SKF and NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH ("NTN") essentially support defendant's arguments on this issue. *Comments of SKF Regarding Final Remand Results ("SKF's Comments")* at 1–3; *NTN's Comments on the Remand Determination of the United States Department of Commerce, International Trade Administration ("NTN's Comments")* at 2–4.

SKF emphasizes that unless the VAT rate is applied to comparable FMV and USP tax bases, application of the VAT rate to USP may result in the creation of dumping margins, a result which SKF contends cannot be allowed pursuant to the Court of Appeals for the Federal Circuit's decision in *Zenith,* 988 F.2d at 1582. *Response of SKF to Comments of Federal–Mogul Regarding Final Results of Redetermination ("SKF's Response")* at 2–7.

This Court remanded this issue for the ITA "to examine the administrative record to determine the exact monetary amount of VAT paid on each sale in the home market and make sure that the amount added to the comparable USP sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to this amount, to add the full amount of VAT paid in the home market to FMV without adjustment...." *Federal–Mogul,* 17 CIT at ——, 824 F.Supp. at 237. Nowhere did this Court discuss changing the ITA's method of adding an amount to USP pursuant to 19 U.S.C. § 1677a(d)(1)(C) to account for the German VAT. ITA was only to "make sure that the amount added to the comparable USP sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to [the amount added to FMV]...." *Federal–Mogul,* 17 CIT at ——, 824 F.Supp. at 237. In fact, this Court implicitly affirmed the ITA's methodology for adjusting USP in its discussion of the tax base issue in *Federal–Mogul Corp. v. United States,* 17 CIT ——, ——, 813 F.Supp. 856, 865–66 (1993).

This Court has fully addressed defendant and defendant-intervenor's arguments on this issue and adheres to its decision in *Federal–Mogul,* 17 CIT at ——, 834 F.Supp. at 1396–97.

Therefore, since as a matter of law the ITA has incorrectly adjusted USP for the German VAT, and since there is no just reason for delay in the entry of final judgment on this issue, this Court is entering final judgment on this issue ordering the ITA to apply the German VAT rate to USP calculated at the same point in the stream of commerce as where the German VAT is applied for home market sales and add the resulting amount to USP.

### 2. *Adjustment to COS for Delayed Payment*

Federal–Mogul also challenges the ITA's explanation of why delayed payment of home market sales expenses should not be factored into the calculation of COS adjustments to FMV. *Federal–Mogul's Comments* at 23–31.

In its Remand Results, the ITA explained why it does not adjust COS adjustments to

FMV for delayed payment of expenses. First, ITA argues that 19 U.S.C. § 1677b(a)(4)(B) (1988) grants the ITA broad authority in determining and allowing adjustments for circumstances of sale, but that Congress expressed concern that any adjustment which the ITA allows be "reasonably identifiable, quantifiable, and directly related to the sales under consideration and [allowed] if there is clear and reasonable evidence of their existence and amount." *Remand Results* at 5 (*quoting* H.R.Rep. No. 317, 96th Cong., 1st Sess. 76 (1979)).

Second, the ITA argues that its regulations implement the statutory intent by stating that the ITA will make a reasonable allowance for a difference in circumstance of sale if the price differential is wholly or partly due to such a difference of sale. 19 C.F.R. § 353.56(a) (1991). ITA's regulations also state that the ITA will allow a COS adjustment "for differences in selling costs (such as advertising) incurred by the producer or reseller but normally only to the extent that such costs are assumed by the producer or reseller on behalf of the purchaser from that producer or reseller." 19 C.F.R. § 353.-56(a)(2) (1991). Finally, in regard to quantifying a COS adjustment, the ITA's regulations state:

> In deciding what is a reasonable allowance for any difference in circumstances of sale, the Secretary normally will consider the cost of such difference to the producer or reseller but, if appropriate, may also consider the effect of such difference on the market value of the merchandise.

19 C.F.R. § 353.56(c) (1991); *Remand Results* at 5–7.

Defendant argues that the ITA's use of cost as a measure of differences in circumstances of sale is reasonable because accurately determining the difference in market value or true economic cost created by differences in circumstances of sale as requested by Federal–Mogul is virtually impossible and there is no reason to believe that such value adjustments could be determined accurately. In other words, the level of precision which Federal–Mogul argues is required in quantifying COS adjustments for delayed payment of home market selling expenses is not "rea-sonably identifiable [and] quantifiable." *Remand Results* at 6–10; *Defendant's Comments* at 8–10.

Therefore, the ITA argues that it is justified in using a respondent's financial records to determine differences in cost when quantifying COS adjustments. *Remand Results* at 10.

Defendant admits that the ITA does in some cases impute costs as requested by Federal–Mogul but only

> where such costs are not recorded in a company's financial records and an item is part of the terms of sale between the buyer and seller, and, as such, is expected to have a direct impact on the negotiated price. For example, credit is part of the terms of sale between the seller and buyer but its full cost is not always recorded in a company's financial records. However, because credit terms unquestionably affect the price negotiated between the buyer and seller, the Department must find a way to account for such differences. The only way to account for them is to impute them.
>
> The Department cannot ignore differences in prices owing to differences in credit terms because such differences constitute an assumption of costs by the seller on behalf of the buyer, as defined in 19 CFR 353.56(a)(2). This is in stark contrast to any potential delay of payment between the seller and its suppliers (such as an advertising agency), where an allowance for delayed payment of selling expenses would involve imputing expenses incurred not between the buyer and seller, but *between the seller and supplier.* While such credit may affect the notion of true economic cost to the seller, it tells us nothing about the differences in prices that result from the different circumstances-of-sale.

*Remand Results* at 10–11 (emphasis in original).

Finally, defendant argues that the United States Court of Appeals for the Federal Circuit's recent decision in *Daewoo Elecs. Co. v. United States,* 6 F.3d 1511, 1518–19 (Fed.Cir. 1993), supports the ITA's use of a respon-

dent's financial records when quantifying COS adjustments.

SKF and NTN essentially agree with the defendant's arguments on this issue. *SKF"s Response* at 7–11; *NTN's Comments* at 4–7.

NTN points out that the ITA has always preferred actual expense information over imputed expenses or costs. *NTN's Comments* at 4–5.

Federal–Mogul argues that, after repeated attempts, the ITA has still not articulated a reasonable explanation as to why the delayed payment of home market selling expenses should not be factored into the quantification of COS adjustments to FMV. Federal–Mogul discusses how the ITA has changed its reasoning for denying Federal–Mogul's requested adjustment over the course of this case and its companion cases which deal with the first administrative reviews of imports of antifriction bearings from various countries, especially the Japanese case (Consol. Court No. 91–07–00530). *Federal–Mogul's Comments* at 23–31.

This Court finds the Court of Appeals for the Federal Circuit's opinion in *Daewoo* instructive on this issue. In *Daewoo*, the court upheld the ITA's decision not to conduct an econometric analysis of home market tax incidence for purposes of making an adjustment to USP for the home market VAT. *Daewoo*, 6 F.3d at 1513–1519. The court stated:

> In contrast to the commercial facts available in sales receipts, tax returns and other accounting records, an econometric analysis of tax pass-through requires numerous subsidiary market inquires, entails a high degree of speculation based on one economic theory rather than another, and produces results of dubious soundness.
>
> Similarly, when this court considered the ITA regulations that modified foreign market value based upon *cost* differences in circumstances of sales, rather than on "value", we recognized that "[t]he ready availability of cost data that can be employed without extensive complex econometric analysis supports the reasonableness of [the ITA's] decision to rely on cost. Cost may be the only *practical* way to adminis-

> ter the statute." *Smith–Corona* [*v. United States*], 713 F.2d [1568] at 1577 n. 27 [(Fed. Cir.1983) ]. An econometric analysis of tax incidence may reasonably be rejected for the same reason. The delay and expense in making such an analysis in virtually every investigation would restrict the number of investigations which could be handled and interfere with the ITA's statutorily mandated duty to "complete the [antidumping] determination within rigid time limits." *Id* at 1577. Nor would this approach enable exporters to the United States to operate within the confines of the antidumping laws; antidumping duty assessments could issue based upon econometric measurements the exporter could not possibly predict. Further, we cannot conclude that the burden is worth undertaking because of more soundly based results.

*Daewoo*, 6 F.3d at 1518–1519 (emphasis in original).

■ This Court finds that the same concerns apply to attempting to quantify COS adjustments to FMV. The statute, legislative history, the ITA's regulations and the *Daewoo* decision all lead this Court to the conclusion that the ITA is not required to reach the level of precision in quantifying COS adjustments which Federal–Mogul believes is required.

Therefore, this Court finds that the ITA is justified in using a respondent's financial records to quantify COS adjustments to FMV and is not required to factor in the effects of delayed payment of home market selling expenses on these COS adjustments.

*Conclusion*

In accordance with the foregoing opinion, since as a matter of law the ITA has incorrectly adjusted USP for the German VAT, and since there is no just reason for delay in the entry of final judgment on this issue, this Court is entering final judgment on this issue ordering the ITA to apply the German VAT rate to USP calculated at the same point in the stream of commerce as where the German VAT is applied for home market sales and add the resulting amount to USP. ITA's decisions not to factor the delayed payment of home market selling expenses into COS

adjustments to FMV, reinstatement of the "all others" cash deposit rate from the LTFV investigation for entries made between May 1, 1992 and June 23, 1992, which have not as yet become subject to a subsequent administrative review and correction of errors in the final margin computer programs for INA and SKF are affirmed. This case is dismissed.

## JUDGMENT

The Department of Commerce, International Trade Administration ("ITA"), having submitted its Final Results of Redetermination Pursuant to Court Remand, *Federal–Mogul Corporation v. United States* Slip Op. 93–96 (June 4, 1993) ("Remand Results"), and the Court having examined all comments filed in regard to the ITA's Remand Results, it is hereby

**ORDERED** that since as a matter of law the ITA has incorrectly adjusted United States price ("USP") for the German value added tax ("VAT"), and since there is no just reason for delay in the entry of final judgment on this issue, this Court is entering final judgment on this issue ordering the ITA to apply the German VAT rate to USP calculated at the same point in the stream of commerce as where the German VAT rate is applied for home market sales and add the resulting amount to USP; and it is further

**ORDERED** that the ITA's determination on remand is affirmed in all other respects; and it is further

**ORDERED** that this case is dismissed.