**FEDERAL–MOGUL CORPORATION, Plaintiff and Plaintiff–Intervenor,**

**The Torrington Company, Plaintiff and Plaintiff–Intervenor,**

v.

**UNITED STATES, Defendant,**

**NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation; Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; Peer Bearing Company; NSK Ltd. and NSK Corporation; Caterpillar Inc.; Minebea Co., Ltd. and NMB Corporation, Defendant–Intervenors.**

Nos. 91–07–00530, 91–08–00569.

United States Court of International Trade.

Oct. 7, 1993.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, Washington, DC, for plaintiff and plaintiff-intervenor Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Christopher J. Callahan, John M. Breen, Geert De Prest, Margaret E.O. Edozien, Lane S. Hurewitz, Patrick J. McDonough, Robert A. Weaver and Amy S. Dwyer, Washington, DC, for plaintiff and plaintiff-intervenor The Torrington Co.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan, of counsel: John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert, Stephen J. Claeys and Craig R. Giesze, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Neil R. Ellis, Susan E. Silver and Niall P. Meagher, Washington, DC, for defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, Chicago, IL, for defendant-intervenors NTN Bearing Corp. of

America, American NTN Bearing Mfg. Corp. and NTN Corp.

Coudert Brothers, Robert A. Lipstein, Matthew P. Jaffe and Nathan V. Holt, Washington, DC, for defendant-intervenors NSK Ltd. and NSK Corp.

Venable, Baetjer, Howard & Civiletti, John M. Gurley, John C. Dibble and Lindsay B. Meyer, Washington, DC, for defendant-intervenor Peer Bearing Co.

Powell, Goldstein, Frazer & Murphy, Richard M. Belanger, Neil R. Ellis and D. Christine Wood, Washington, DC, for defendant-intervenor Caterpillar Inc.

Tanaka Ritger & Middleton, H. William Tanaka, Michele N. Tanaka and Michael J. Brown, Washington, DC, for defendant-intervenor Minebea Co., Ltd. and NMB Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Federal–Mogul Corporation ("Federal–Mogul") and The Torrington Company ("Torrington"), commenced this consolidated action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Antidumping Duty Administrative Reviews,* 56 Fed.Reg. 31,754 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Issues Appendix"),* 56 Fed.Reg. 31,692 (1991).

### Background

In *Federal–Mogul Corp. v. United States,* 17 CIT ——, 813 F.Supp. 856, 873 (1993), this Court remanded this case to the ITA to examine the administrative record to determine the exact monetary amount of [value added tax] paid on each sale in the home market and make sure that the amount added to the comparable [United States price] sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to this amount, to add the full amount of [value added tax] paid in the home market to [foreign market value] without adjustment and to explain why any savings resulting from deferred payment of sales expenses should or should not be factored into the calculation of each type of [circumstance of sale] adjustment made to [foreign market value] in this review.

In *Torrington Co. v. United States,* 17 CIT ——, 818 F.Supp. 1563, 1580–81 (1993), this Court remanded this case to the ITA to

add the full amount of [value added tax] paid on each sale in the home market to [foreign market value] without adjustment and to develop a methodology which removes [post sale price adjustments] and rebates paid on sales of out of scope merchandise from any adjustment made to [foreign market value] for [post sale price adjustments] and rebates, or to deny an adjustment if a viable method cannot be found.

On June 28, 1993, the ITA filed with this Court its Final Results of Redetermination Pursuant to Court Remand, *Federal–Mogul Corporation v. United States* Slip Op. 93–17 (February 4, 1993) and *The Torrington Company v. United States* Slip Op. 93–44 (March 29, 1993) ("*Remand Results*"). In its Remand Results, the ITA: (1) added to foreign market value ("FMV") the amount of value added tax ("VAT") paid on sales of the subject merchandise in the home market without adjustment and also added the exact same amount to United States price ("USP"); explained in greater detail why savings realized from delayed payment of home market sales expenses should not be factored into the calculation of circumstance of sale ("COS") adjustments to FMV; and disallowed adjustments for post sale price adjustments ("PSPAs") for Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo"), NSK Ltd. and NSK Corporation ("NSK"), and NTN Bearing Corporation of America, American NTN Bearing Manufacturing Cor-

poration and NTN Corporation ("NTN"). *Remand Results* at 3–15.

### Discussion

ITA's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. Value Added Tax

Federal–Mogul and Torrington challenge the ITA's treatment of the Japanese VAT. *Federal–Mogul Corporation's Comments Concerning Defendant's Final Results of Redetermination Pursuant to Court Remand ("Federal–Mogul's Comments")* at 3–22; *Memorandum of The Torrington Company in Support of its Motion for a Second Remand ("Torrington's Memorandum")* at 2–10. In addition, Federal–Mogul has filed a motion for an order holding certain Department of Commerce officials in contempt of court and for the imposition of sanctions, arguing that the ITA has willfully disobeyed the orders of this Court by pursuing a goal of tax neutrality in its treatment of VATs. *Motion of Plaintiff Federal–Mogul Corporation for an Order Holding Certain Commerce Department Officials in Contempt of Court and Imposing Sanctions.* Torrington takes no position on Federal–Mogul's motion for contempt of court and sanctions.

*Response of The Torrington Company to Federal–Mogul's Motion for Sanctions.*

In its Remand Results, as instructed by this Court, the ITA added the amount of VAT paid on each sale in the home market without making a COS adjustment to this amount. In addition and on its own initiative, the ITA added the exact same amount to USP instead of following its usual practice of applying the *ad valorem* VAT rate to the net USP after all adjustments had been made and adding this amount to USP. *Remand Results* at 3; *see Issues Appendix,* 56 Fed.Reg. at 31,729. ITA's rationale for its new approach is based on its interpretation of the United States Court of Appeals for the Federal Circuit's recent opinion on the VAT issue in *Zenith Elecs. Corp. v. United States,* 988 F.2d 1573, 1580–82 (1993). *Remand Results* at 3.

Defendant argues that the ITA's new VAT methodology is responsive to this Court's remand order. Specifically, the defendant argues that this new methodology adds the full amount of VAT to FMV, ensures that the tax adjustment made to USP is not greater than the amount of VAT added to FMV and does not make a COS adjustment to the amount of VAT added to FMV. *Remand Results* at 3–4; *Defendant's Rebuttal Comments to Comments filed with Respect to Remand Results ("Defendant's Comments")* at 3–6.

In addition, defendant argues that the ITA's new methodology is in accord with *Zenith,* 988 F.2d at 1580–82. The court in *Zenith* held that the ITA was not allowed to make a COS adjustment to FMV to achieve tax neutrality by eliminating the so-called multiplier effect of 19 U.S.C. § 1677a(d)(1)(C) (1988).[1] The court reasoned

---

1. 19 U.S.C. § 1677a(d)(1)(C) states:

**(d) Adjustments to purchase price and exporter's sales price**
The purchase price and the exporter's sales price shall be adjusted by being—
(1) increased by—

    .        .        .        .        .

(C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not been collected, by reason of the exportation of

the merchandise to the United States, but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation; . . . .

The multiplier effect can be seen in the following example taken from *Zenith Elecs. Corp. v. United States,* 10 CIT 268, 273 n. 9, 633 F.Supp. 1382, 1386 n. 9 (1986), *appeal dismissed,* 875 F.2d 291 (Fed.Cir.1989):

Suppose the pre-tax home market price for a certain model of Japanese television is equal to $100, while the purchase price for the same

that 19 U.S.C. § 1677a(d)(1)(C) is the sole provision of the anti-dumping duty statute that deals with the treatment of VATs. As a result, 19 U.S.C. § 1677b(a)(4)(B) (1988), which allows adjustments to FMV for differences in circumstances of sale, does not apply and cannot be used to achieve tax neutrality. *Zenith*, 988 F.2d at 1580–82.

The court also stated that:

By engaging in dumping, the exporters themselves are responsible for the multiplier effect. The multiplier effect does not create a dumping margin where one does not already exist. Only when pre-tax FMV exceeds USP and a foreign nation assesses an ad valorem domestic commodity tax does section 1677a(d)(1)(C) operate to accentuate the dumping margin. Without a dumping margin (when pre-tax FMV equals [or is less than] USP), even assessment of an *ad valorem* tax creates no multiplier effect. The multiplier effect thus occurs only when a dumping margin already exists. If a foreign manufacturer does not export its wares at less than fair value, it will not suffer disadvantage from the operation of section 1677a(d)(1)(C).

Moreover, the enactment history of section 1677a(d)(1)(C) does not suggest that Congress sought tax neutrality when it fashioned the adjustment provision.

*Zenith*, 988 F.2d at 1581–82. It is clear from this statement that tax neutrality is irrelevant to the proper application of 19 U.S.C. § 1677a(d)(1)(C). *See also Federal–Mogul*, 17 CIT at ——, 813 F.Supp. at 864–65.

Defendant argues that the court in *Zenith* only decided that the ITA could not make a COS adjustment to FMV to obtain tax neutrality. Defendant argues that the court's decision does not mean that the ITA cannot

adopt an interpretation of the statute which would result in tax neutrality. Defendant states that its position is affirmed by footnote 4 in *Zenith* which states:

The statute by its express terms allows adjustment of USP in the *amount* of taxes on the merchandise sold in the country of exportation. While perhaps cumbersome, Commerce may eliminate the multiplier effect by adjusting USP by the amount, instead of the rate, of the *ad valorem* tax.

988 F.2d at 1582 n. 4 (emphasis in original); *Defendant's Comments* at 6–7.

Defendant argues that there are two valid interpretations of the statutory language in regard "to whether the tax to be added to USP is: (a) the tax that would have been charged on the exported merchandise, had the foreign country taxed exports; or (b) the tax that would have been charged on the exported merchandise, had it been sold in the foreign market." *Defendant's Comments* at 7. ITA has chosen the second interpretation and defendant argues that this interpretation is entitled to substantial deference citing *Chevron v. Natural Resources Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Defendant's Comments* at 7.

Koyo, NSK and NTN agree with the ITA's treatment of the Japanese VAT on remand and support the defendant's arguments on this issue. *Response of Koyo Seiko Co. and Koyo Corporation of U.S.A. to the Final Results of Redetermination Pursuant to Court Remand* ("Koyo's Response") at 4–7; *Reply of Koyo Seiko Co. and Koyo Corporation of U.S.A. to Comments on the Final Results of Redetermination Pursuant to Court Remand* ("Koyo's Reply") at 3–8; *Reply Comments of Defendant–Intervenor NSK on Final Remand Results* ("NSK's Re-

---

model when sold for export to the United States is $90. In this tax-free comparison, the absolute margin of dumping would be $10 ($100–$90) and the *ad valorem* margin would be 11.1% ($10/$90).

Since the Japanese commodity tax is 15%, the tax on the home market sale equals $15 (15% of $100). If we assume that this tax is fully shifted forward to the home market purchaser, then the after-tax home market price equals $115. By contrast, the amount of tax rebated or not collected on the exported television because it was sold for export would equal

only $13.50 (15% of $90). Hence, if the United States price were increased by this latter amount, in accordance with the terms of 19 U.S.C. § 1677a(d)(1)(C), the adjusted calculation of USP would be $103.50 ($90 + $13.50). The absolute margin, determined by subtracting the adjusted USP from the after-tax home market price, would be $11.50 ($115–$103.50), an amount greater than the $10 absolute margin calculated in the tax-free comparison, above. The *ad valorem* margin, however, would be identical, at 11.1% ($11.50/$103.50).

ply") at 1–4; *NTN's Comments on the Remand Determination of the United States Department of Commerce, International Trade Administration* ("*NTN's Comments*") at 2–4.

In addition, NSK argues that if the Court remands this issue back to the ITA to apply the Japanese *ad valorem* rate to net USP, the ITA should be required to use the same net price base the ITA used for FMV, *i.e.,* net unit price minus rebates and discounts. *Comments of Defendant–Intervenor NSK Limited on Final Remand Results* ("*NSK's Comments*") at 2.

Federal-Mogul and Torrington argue that footnote 4 in *Zenith* is merely dicta and not the holding of the Court of Appeals on this issue. *Federal–Mogul's Comments* at 14–18; *Torrington's Memorandum* at 7–9.

In addition, Torrington argues that footnote 4 is an inaccurate statement of the law. Torrington argues that 19 U.S.C. § 1677a(d)(1)(C) states that "the amount of any taxes imposed in the country of exportation directly upon the *exported merchandise* ... which have been rebated or which have not been collected, by reason of the exportation...." must be added to USP. *Torrington's Memorandum* at 7 (emphasis in original). Nowhere does the statute discuss using the amount of tax paid on home market sales.

Federal–Mogul also points out that, until now, the ITA has consistently interpreted the statute to require the application of the *ad valorem* VAT rate to net USP to derive the amount that is added to USP. Federal–Mogul states:

> First, Commerce never adjusts USP by a rate of an *ad valorem* tax. It adjusts USP by an *amount* of tax—an amount which is arrived at by applying a rate to a tax base. The *amount* of tax used in the adjustment to USP has been the statutory amount of tax forgiven on exportation.

*Federal–Mogul's Comments* at 16 (emphasis in original).

This Court remanded this issue for the ITA "to examine the administrative record to determine the exact monetary amount of VAT paid on each sale in the home market

and make sure that the amount added to the comparable USP sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to this amount, to add the full amount of VAT paid in the home market to FMV without adjustment...." *Federal–Mogul,* 17 CIT at ——, 813 F.Supp. at 873. Nowhere did this Court discuss changing the ITA's method of adding an amount to USP pursuant to 19 U.S.C. § 1677a(d)(1)(C) to account for the Japanese VAT. ITA was only to "make sure that the amount added to the comparable USP sale pursuant to 19 U.S.C. § 1677a(d)(1)(C) is less than or equal to [the amount added to FMV]...." *Id.* In fact, this Court implicitly affirmed the ITA's methodology for adjusting USP in its discussion of the tax base issue in this case. 17 CIT at ——, 813 F.Supp. at 865–66.

Defendant relies on *Zenith* to support its position. Although the ITA's Remand Results do not explicitly cite to footnote 4, this is the ITA's primary support for its mistaken belief that its new VAT methodology is not in conflict with the body of the *Zenith* opinion and the language of the statute. *Defendant's Comments* at 6–10. However, this Court finds that footnote 4 is clearly at odds with the body of *Zenith* and the language of the statute and is dicta.

■ The court in *Zenith* states that "[t]itle 19 explicitly requires Commerce to increase USP by the amount of tax that the exporting country *would have assessed on the merchandise if it had been sold in the home market.*" 988 F.2d at 1580 (emphasis added). It is clear from this statement, as well as the language of the statute itself, that the sale price to which the VAT rate is to be applied is the USP calculated at the same point in the chain of commerce as where the Japanese tax authorities apply the Japanese VAT to home market sales. For example, if when taxing home market sales, the Japanese tax authorities apply the Japanese VAT rate to an ex-factory price to calculate the amount of tax due, the ITA is required to apply the Japanese VAT rate to an ex-factory USP and add the resulting amount to USP. 19 U.S.C. § 1677a(d)(1)(C).

Support for this position is provided by the Court of Appeals for the Federal Circuit's recent decision on the tax base issue in *Daewoo Elecs. Co. v. United States*, 6 F.3d 1511 (Fed.Cir.1993). The court in *Daewoo* stated that 19 U.S.C. § 1677a(d)(1)(C)

mandates a calculation of imputed tax amounts to be added to the USP, *but does not specify to which USP the Korean taxes are to be applied as the product moves to the consumer.* This determination is important because the Korean taxes are not a specific amount, but instead ad valorem in nature; and it is difficult because the question is a hypothetical. *The Korean taxes must be applied to sales of goods at some discrete moment in the stream of commerce with or in the United States, a different market from that in which the taxes should be levied, but are not, because of exportation.*

*Daewoo*, 6 F.3d at 1519 (emphasis added). In the *Daewoo* case, the ITA determined that evidence on the administrative record showed that the Korean tax authorities applied their *ad valorem* taxes to "the net price of the delivered televisions receivers to unrelated dealers." *Id.*, 6 F.3d at 1519. Therefore, the ITA applied the Korean tax rate to the comparable USP, *i.e.*, the price to the first unrelated purchaser. *Id.*, 6 F.3d at 1519. The court went on to affirm the ITA's methodology of determining where in the stream of commerce the Korean authorities applied the *ad valorem* tax rate in the home market and applying the same tax rate to USP calculated at the same point in the chain of commerce and adding this amount to USP. *Id.*, 6 F.3d at 1519–20.

Therefore, since as a matter of law the ITA has incorrectly adjusted USP for the Japanese VAT, and since there is no just reason for delay in the entry of final judgment on this issue, this Court is entering final judgment on this issue ordering the ITA to apply the Japanese VAT rate to USP calculated at the same point in the stream of commerce where the Japanese VAT is applied for home market sales and add the resulting amount to USP.

Since this issue has been dealt with in this opinion, this Court finds that Federal–Mogul's motion for a finding of contempt of court and for the imposition of sanctions is moot. However, defendant is warned that the ITA's repeated failure to comply with the remand orders of this Court will result in a finding of contempt and assessment of costs against the government. *See, e.g., NSK Ltd. v. United States*, 17 CIT ——, ——, 819 F.Supp. 1096, 1099 (1993).

2. *Adjustment to COS for Delayed Payment*

■ Federal–Mogul also challenges the ITA's explanation of why delayed payment of home market sales expenses should not be factored into the calculation of COS adjustments to FMV. *Federal–Mogul's Comments* at 22–36. Torrington takes no position in regard to the ITA's failure to factor delayed payment into the calculation of COS adjustments to FMV. *Torrington's Memorandum* at 11.

Defendant states that the analysis presented in the Remand Results contains incorrect information and should be remanded back to the ITA for correction. *Defendant's Comments* at 10–11.

This Court agrees that the ITA's explanation in its Remand Results is less than adequate and incorrect on certain issues. Therefore, this Court remands this issue to the ITA for correction and a more coherent explanation of its position.

3. *Post Sale Price Adjustments*

Koyo, NSK and NTN challenge the ITA's treatment of PSPAs. *Koyo's Response* at 10–12; *NSK's Comments* at 3–4; *NTN's Comments* at 7–10.

In *Torrington,* this Court remanded this issue to the ITA "to develop a methodology which removes PSPAs and rebates paid on sales of out of scope merchandise from any adjustments made to FMV for PSPAs or rebates or, if no viable method can be developed, to deny such an adjustment in its calculation of FMV." 17 CIT at ——, 818 F.Supp. at 1579. This Court also suggested a possible methodology that the ITA could use in order to eliminate PSPAs and rebates paid on out of scope merchandise from the calcu-

lation of the COS adjustment to FMV stating that the ITA could

> calculat[e] the amount of in-scope merchandise sold to each customer as a percentage of total sales to that customer and appl[y] this percentage to the total amount of PSPAs and rebates paid to that customer during the period of review to arrive at a total amount of PSPAs and rebates paid to that customer on sales of in-scope merchandise within the period of review.

17 CIT at ――, 818 F.Supp. at 1578–79.

In its Remand Results, the ITA rejected the Court's proposed methodology stating that the methodology would leave the PSPA and rebate percentage applied to the sale price the same thereby having no effect on the final results. *Remand Results* at 13–14. The ITA also stated that it had "no information that would allow it to segregate the in-scope merchandise PSPAs from those attributable to out-of-scope merchandise." *Id.* at 14.

Defendant argues that the ITA was justified in rejecting the Court's proposed methodology. Defendant argues that since the method would result in no change in the adjustment to FMV, it did not in fact remove PSPAs and rebates paid on out of scope merchandise. *Defendant's Comments* at 12–13. Defendant points out that the only situation where the Court's proposed methodology would work is one in which the amount paid in PSPAs and rebates is the same for each sale of both out of scope and in-scope merchandise. *Id.* at 13 n. 2. Defendant states that the ITA had no evidence on the administrative record to show that this had occurred. *Id.* Therefore, the ITA denied Koyo, NSK and NTN an adjustment to FMV for their PSPAs. *Remand Results* at 15.

Koyo argues that the Court's proposed methodology was reasonable and that this issue should be remanded to the ITA to apply it. *Koyo's Comments* at 11.

NSK argues that it did report lump sum payments of PSPAs and rebates which were the same for both in-scope and out of scope sales, therefore, the Court's proposed methodology would work for NSK. As a result, the ITA should be required to reinstate the adjustment to FMV using NSK's lump sum payments of PSPAs and rebates as reported in the "REBATEH4" field of NSK's home market sales data submission. *NSK's Comments* at 3–4.

NTN states that it filed unsolicited comments with the ITA pointing out relevant information on the administrative record which would assist the ITA in its redetermination on this issue and suggesting a methodology which would remove PSPAs and rebates on out of scope merchandise from any adjustment made to FMV. *NTN's Comments* at 7; Remand Record Public Document Numbers ("R.R.Pub.Doc. Nos.") 1, 3. NTN argues that the ITA's Remand Results contain no evidence that the ITA considered NTN's submissions or even tried to develop a methodology which would remove PSPAs and rebates on out of scope merchandise from adjustments to FMV. *NTN's Comments* at 7–8. In addition, NTN argues that the ITA's denial of an adjustment for PSPAs is tantamount to the use of best information available ("BIA"). NTN argues that the ITA's use of BIA is not in accordance with law because NTN has not failed to provide the ITA with requested information as is required for the use of BIA. *Id.* at 7–9. Finally, NTN points out that nothing in this Court's remand order prevented the ITA from using comments submitted by interested parties. Given that the ITA had been satisfied with NTN's PSPA and rebate reporting methodology until this Court's decision, NTN argues that the ITA should be required to provide the parties an opportunity to actively help the ITA develop a method for excluding out of scope PSPAs and rebates. *Id.* at 9–10.

Defendant argues that the ITA did consider the comments submitted by NTN but concluded that it was still unable to develop a methodology which removed out of scope PSPAs and rebates. *Defendant's Comments* at 13–14; R.R.Pub.Doc. No. 2. In addition, defendant and Torrington argue that the denial of an adjustment to FMV for PSPAs and rebates pursuant to this Court's order is not an application of BIA. *Id.* at 14; *Rebuttal of The Torrington Company to Comments of NSK Ltd. and NTN Corporation Regarding*

*Remand Determination* ("*Torrington's Rebuttal*") at 4.

Defendant and Torrington also argue that since this Court did not explicitly require the ITA to seek new information in regard to this issue, it was within the ITA's discretion not to request new information. Defendant argues that the ITA could reasonably assume that respondents reported all PSPA and rebate information as accurately as possible, therefore, there was no need for the ITA to request more information. *Defendant's Comments* at 15; *Torrington's Rebuttal* at 3–5.

In addition, defendant points out that NTN's submission highlighting information on the administrative record and proposing a methodology to eliminate out of scope PSPAs and rebates was submitted on June 24, 1993. R.R.Pub.Doc. No. 3. This issue was remanded to the ITA on March 29, 1993 and the remand results were due June 28, 1993. Therefore, NTN's information submission was untimely submitted and the ITA was justified in not using it. *Defendant's Comments* at 16.

Finally, defendant argues that NTN's submission failed to demonstrate that the Court's proposed methodology would work for certain of NTN's sales because

> NTN failed to demonstrate that the amounts of the discounts referred to in the June 24, 1993 letter were constant from product to product over all of NTN's sales to the particular purchasers. Indeed, any conclusion that the discounts were constant is repudiated by NTN's response to Section C of Commerce's questionnaire during the administrative review.

*Defendant's Comments* at 16 (*citing* Administrative Review Record Confidential Document 79 at 10). Defendant also argues that NTN failed to provide the underlying information used in the methodology it proposed to eliminate out of scope PSPAs and rebates for certain other purchasers and failed to cite to where the underlying information could be found in the administrative record. Therefore, defendant argues that the ITA properly rejected NTN's proposed methodologies. *Id.* at 16–17.

As to NSK, Torrington argues that NSK's claim for a COS adjustment to FMV based on "REBATEH4" was not derived solely from PSPAs paid on in-scope merchandise as required by *Torrington,* 17 CIT at ——, 818 F.Supp. at 1578–79. *Torrington's Rebuttal* at 5–6.

■ As an initial matter, the Court points out that all parties have the right to submit comments and propose methodologies to the ITA in situations, such as here, where the Court has remanded an issue for the ITA's reconsideration. There is no requirement that the ITA actively solicit comments in order for parties to submit them. The ITA is required to consider such submissions when conducting its redetermination on remand. However, the comments must be presented early enough in the remand process to allow the ITA to properly consider them. The ITA did consider such comments during this remand proceeding. R.R.Pub.Doc. No. 2.

■ However, the ITA is not required to accept *new information* during the course of the remand unless this Court explicitly tells it to do so.

In this case, NTN attempted to submit new information to the ITA in regard to its proposed methodology for removing out of scope PSPAs and rebates from an adjustment to FMV for its sales to certain customers. R.R. Confidential Doc. No. 1. The ITA was not required to consider this new information during the course of this remand.

■ Defendant is correct that the methodology proposed by this Court in *Torrington,* 17 CIT at ——, 818 F.Supp. at 1578–79, only works if PSPAs and rebates paid to each customer are the same for each sale of in-scope and out of scope merchandise which occurred during the period of review. *Defendant's Comments* at 13 n. 2. By definition, this can occur in situations where a respondent made lump sum payments to a customer in regard to all of that customer's purchases. The lump sum payments must translate into PSPAs and rebates that would be the same for each sale of in-scope and out of scope merchandise made to a specific customer for the entire period of review. De-

fendant states that the ITA was unable to find evidence on the administrative record that these types of payments had occurred. *Id.*

NSK and NTN claim that they reported lump sum payments which meet the criteria for the application of the Court's proposed methodology for some of their sales. *NSK's Comments* at 3–4; *NTN's Comments* at 7. After examining the administrative record compiled during the course of the administrative review and the administrative record compiled during the remand, this Court finds that NSK and NTN have failed to prove that the lump sum payments they made during the period of review were for the same amount when allocated on a sale-by-sale basis.

NSK reported that lump sum payment amounts were recorded on a monthly basis and added together to obtain a total amount paid for the period of review. This amount was allocated over all sales to that specific customer. Administrative Review Record Public Document Number ("A.R.R.Pub.Doc. No.") 554 at 11. NSK's submission shows that numerous lump sum payments were made over the period of review to each customer which received them. However, the submission does not show that when each separate lump sum PSPA or rebate payment was allocated to the relevant sales, the per-sale PSPA or rebate amount is the same when comparing the separate lump sum payments.[2] Therefore, this is not a situation where the Court's proposed methodology would be applicable. The same situation applies to NTN. A.R.R. Confidential Doc. No. 79 at 10.

Finally, the ITA's denial of an adjustment to FMV for PSPAs and rebates was not a use of BIA. Here Koyo, NSK and NTN have not shown that they have met the statutory requirements to receive an adjustment to FMV for their PSPAs and rebates and the ITA correctly denied them such an adjust-

ment. This is not the use of BIA. *See* 19 U.S.C. § 1677e(c) (1988).

Therefore, the ITA's denial of an adjustment to FMV for Koyo, NSK and NTN's PSPAs and rebates is affirmed.

### 4. *Clerical Error*

NSK alleges that the ITA incorrectly reported the recalculated weighted average dumping margin for NSK's ball bearings. *NSK's Comments* at 1–2. Defendant agrees and asks this Court to remand this issue to the ITA to correct this error. *Defendant's Comments* at 17.

Therefore, on remand the ITA will correctly report NSK's weighted average dumping margin for ball bearings.

### *Conclusion*

In accordance with the foregoing opinion, this case is remanded back to the ITA to clarify its explanation of why delayed payment of home market sales expenses should not be factored into the calculation of COS adjustments to FMV and to correctly report NSK's weighted average dumping margin for ball bearings. In addition, since as a matter of law the ITA has incorrectly adjusted USP for the Japanese VAT, and since there is no just reason for delay in the entry of final judgment on this issue, this Court is entering final judgment on this issue ordering the ITA to apply the Japanese VAT rate to USP calculated at the same point in the stream of commerce as where the Japanese VAT is applied for home market sales and add the resulting amount to USP. ITA's denial of an adjustment to FMV for Koyo, NSK and NTN's PSPAs and rebates is affirmed. The second remand results are due within thirty (30) days of the date this opinion is entered. Comments or responses by the parties are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15)

---

**2.** For example, on one occasion NSK may have made a lump sum payment of 1000 yen for sales of 100 in-scope and out of scope bearings. On another occasion, NSK may have made a lump sum payment of 500 yen for sales of 100 in-scope and out of scope bearings. Therefore, NSK would report a PSPA or rebate of 7.5 yen per sale when in fact the correct amounts would be 10 yen per sale for the first lump sum payment and 5 yen per sale for the second lump sum payment.

days of the date responses or comments are due.