NATIONAL STEEL CORPORATION, AK Steel Corporation, Bethlehem Steel Corporation, Gulf States Steel, Inc. of Alabama, Inland Steel Industries, Inc., LTV Steel Company, Inc., Sharon Steel Corporation, U.S. Steel Group a Unit of USX Corporation, WCI Steel, Inc., Plaintiffs,

v.

UNITED STATES, Defendant,

Hoogovens Groep B.V. and N.V.W. (U.S.A.), Inc., Defendant–Intervenors.

Slip Op. 96–14.
Court No. 93–09–00616–AD.

United States Court of International Trade.

Jan. 11, 1996.

Skadden, Arps, Slate, Meagher & Flom, Washington, DC (Robert E. Lighthizer, John J. Mangan, and Mark Del Bianco) for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis), Edward Reisman, Attorney–Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC, of counsel, for defendant.

Powell, Goldstein, Frazer & Murphy, Washington, DC (Peter O. Suchman, Neil R. Ellis, and Niall P. Meagher) for defendant-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

In this action, National Steel Corporation, AK Steel Corporation, Bethlehem Steel Corporation, Gulf States Steel, Inc. of Alabama, Inland Steel Industries, Inc., LTV Steel Company, Inc., Sharon Steel Corporation, U.S. Steel Group A Unit of USX Corporation, and WCI Steel, Inc. (Domestic Producers) and Hoogovens Groep B.V. and N.V.W. (U.S.A.), Inc. (Hoogovens), contest the final results of the remand determination filed by Commerce pursuant to this court's order in *National Steel Corp. v. United States*, 18 CIT ——, 870 F.Supp. 1130 (1994) [hereinafter *National Steel*]. The court remanded Commerce's final determination with respect to three issues.

The court directed Commerce to: (1) re-calculate the adjustment to United States Price (USP) for the value added tax (VAT) not collected or rebated due to exportation; (2) articulate standards for determining the highest non-aberrant margin used as best information available (BIA); and (3) select a BIA margin indicative of the sales made by Hoogovens. *Id.* at ——, 870 F.Supp. at 1137–39. The parties challenge Commerce's remand determination. The court has juris-diction over these issues pursuant to 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1988).

## Background

In *National Steel,* the court reviewed chal-lenges to Commerce's investigation of cold-rolled carbon steel flat products from the Netherlands. *See Final Determinations of Sales at Less Than Fair Value: Certain Hot–Rolled Carbon Steel Flat Products and Certain Cold–Rolled Carbon Steel Flat Prod-ucts From the Netherlands,* 58 Fed.Reg. 37,-199, *amended by Antidumping Duty Order,* 58 Fed.Reg. 44,172 (Dep't Comm.1993) (de-termination reviewed) [hereinafter *Final·De-termination* ]. Among other issues, the court reviewed Commerce's selection and ap-plication of the highest non-aberrant margin as BIA for a substantial number of omitted transactions within Exporter Sales ·Price data provided by Hoogovens' U.S. affiliate. The court upheld Commerce's selection of the highest non-aberrant margin as BIA, giv-en substantial omissions in the ESP data, and Hoogovens' failure to meet statutory deadlines in correcting the deficiencies. The court found, however, that Commerce's se-lected margin appeared to be aberrant.

Commerce failed to provide an explanation of the term non-aberrant margin, or any method for distinguishing an aberrant mar-gin from a non-aberrant one. Given. the minuscule percentage of sales that had high-er margins, and their insignificant proportion by volume of total sales, the court found that Commerce's selected margin likely would be aberrant. Accordingly, the court directed Commerce to provide standards for judging the highest non-aberrant margin, and to se-lect a BIA margin indicative of Hoogovens' sales.

Further, the court considered Commerce's adjustment to the United States Price (USP) to account for the value-added tax (VAT). Commerce sought to eliminate the false dumping margin created when adjusting the VAT by applying the tax rate to the USP, rather than adding.to the USP the actual amount of the tax imposed. The court, fol-lowing *Federal–Mogul Corp. v. United States,* 17 CIT 1093, 834 F.Supp. 1391 (1993), found Commerce's tax-neutral methodology contrary to law, and remanded the tax ad-justment to Commerce for recalculation. ·

## Discussion

This court shall uphold Commerce's final determination in an antidumping duty inves-tigation unless that determination is "unsup-ported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1994). Substantial evidence is "such relevant evidence as a rea-sonable mind might accept as adequate to support a conclusion." · *Universal Camera Corp. v. NLRB,* ˋ340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Con-solidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

## I. Defining Highest Non-aberrant Margin

Upon remand, Commerce followed two principles in its selection of the highest non-aberrant margin. First, Commerce sought a margin sufficiently adverse to be consistent with the statutory purposes of the BIA rule—to induce respondents to provide Com-merce with complete and accurate informa-tion in a timely fashion. Second, Commerce sought a margin indicative of Hoogovens' sales. Commerce reasoned the BIA rate should be based on transactions involving substantial commercial quantities. Com-merce selected a margin in which three per-cent of the transactions by volume—which constituted a significant number of transac-tions—had calculated margins with higher rates than the BIA rate. According to Com-merce, therefore, these transactions did not represent a minuscule proportion of Hoogo-vens' sales.

Domestic Producers argue this methodolo-gy fails to properly implement the court's

order. Domestic Producers contend Commerce has failed to provide a sufficient explanation as to the basis for its selected margin, or select a new highest non-aberrant margin indicative of Hoogovens' sales.

Domestic Producers claim whether a sale is non-aberrant ought to be determined by whether the sale on which the margin is based is representative of the respondent's customary selling practices and is made in normal commercial quantities. At no point, Domestic Producers contend, did the Court hold that a margin would be aberrant if there were not a substantial quantity of sales (either by tonnage or by number) with higher margins. (Domestic Steel Producers' Comments on Remand Det. of the Dep't of Comm., at 3.) [hereinafter Domestics' Remand Br.] Such a holding, Domestic Producers contend, would not have permitted selection of the highest non-aberrant margin.

According to Domestic Producers, Commerce defined an aberrant margin solely by whether sales with higher margins comprised only a minuscule quantity of Hoogovens' overall sales. Domestic Producers claim this is a bright-line test justifying a remand of Commerce's determination. Further, Domestic Producers also contend that Commerce improperly looked to the aberrance of individual margins in choosing the highest non-aberrant margin, rather than basing the highest non-aberrant margin upon Hoogovens' sales. (Domestics' Remand Br. at 5–6.)

■ Domestic Producers are in error. Commerce has avoided a bright line test. According to Commerce, "we have determined that the highest, non-aberrant margin should be established on a case-by-case basis," guided by the two principles noted previously. *Redetermination on Remand, Final Determination of Sales at Less Than Fair Value: Certain Hot–Rolled Carbon Steel Flat Products and Certain Cold–Rolled Carbon Steel Flat Products From the Netherlands* No. A–421–803/804 at 9 (Dep't Comm.1995) [hereinafter *Remand Redetermination* ]. Commerce has the discretion to select the appropriate methodology for determining and selecting BIA, so long as that methodology is reasonable. Commerce's actions may be unreasonable if "the agency . . .

[has] . . . reject[ed] low margin information in favor of high margin information that was demonstrably less probative of current conditions." *Rhone Poulenc, Inc. v. United States*, 8 Fed.Cir. (T) 61, 67, 899 F.2d 1185, 1190 (1990).

Both the statute, 19 U.S.C. § 1677e(c) (1988), and the implementing regulation, 19 C.F.R. 353.37 (1995), define in what circumstances Commerce must resort to BIA. These provisions, however, give few guidelines as to what constitutes the appropriate BIA. *Krupp Stahl A.G. v. United States*, 17 CIT 450, 453, 822 F.Supp. 789, 792 (1993).

■ Commerce's two guidelines for selecting the highest non-aberrant margin, that the margin must be sufficiently adverse and that the margin must be indicative of current conditions, are reasonable. Commerce's selected margin must now have a rational relationship to the foreign manufacturer's sales. By demonstrating this relationship, Commerce can provide the link to respondent's customary selling practices. In this manner, Commerce's guidelines meet the basic goals of the BIA rule: to encourage compliance while determining current margins as accurately as possible, *Rhone Poulenc*, 8 Fed.Cir. (T) at 67, 899 F.2d at 1191 (1990); *see also D & L Supply Co. v. United States*, 19 CIT ——, 888 F.Supp. 1191, 1194–95 (1995). Accordingly, the court accepts Commerce's criteria for what they call the highest nonaberrant margin.

## II. Selection of the Highest Non-aberrant Margin

Commerce selected a margin of 44.89 percent as the highest non-aberrant margin as BIA for certain U.S. sales Hoogovens had failed to report in the original investigation. Commerce had originally selected a margin of 157.51 percent as BIA in its *Final Determination*. *National Steel*, 18 CIT at ——, 870 F.Supp. at 1136. Domestic Producers object to the 44.89 percent margin, contending a higher margin would be proper. (Domestics' Remand Br. at 6–7.)

■ Although section 353.37, title 19, Code of Federal Regulations allows Commerce to

presume that of the current margins, the highest margins may constitute the best information available, *see* 19 C.F.R. § 353.37 (noting factors Commerce may take into account when determining BIA), the ultimate purpose of BIA is not to punish, *see Pulton Chain Co. v. United States,* 17 CIT 1136, 1139, 1993 WL 428632 (1993). This is the result of a common sense inference that importers should not be rewarded for providing inaccurate or incomplete data when it would be to their advantage to withhold such information, and conversely to encourage importers to produce current information in a timely manner, *Rhone Poulenc,* 8 Fed.Cir. (T) at 67–68, 899 F.2d at 1190–91, provided the importer is able to do so, *see Usinor Sacilor v. United States,* 19 CIT ——, ——, 907 F.Supp. 426, 429 (1995) (finding deficiencies in data were beyond Usinor's control, meriting neutral margin for BIA).

■ There is no requirement that Commerce must choose the highest margin. The basic requirement of the BIA rule is to determine margins as accurately as possible. *Rhone Poulenc,* 8 Fed.Cir. (T) at 68, 899 F.2d at 1191. A selection of a lower margin is permissible, and frequently appropriate, so long as Commerce's selection is rational and probative of current conditions. Commerce, however, has failed to meet this burden.

While Commerce has demonstrated its margin is sufficiently adverse, finding that "ninety-seven percent of the merchandise sold by Hoogovens is subject to margins below th[is] rate," *Remand Redetermination* at 5, Commerce has not explained how the margin is rationally related to Hoogovens' sales and indicative of Hoogovens' customary selling practices. Commerce noted in the *Remand Redetermination* that it made its particular selection because "three percent of the volume of the merchandise sold by Hoogovens and a significant number of transactions have calculated margins with rates higher than the margin chosen as partial BIA." *Remand Redetermination* at 10–11. Commerce's reasoning is unclear. The mere fact that a significant number of transactions have higher margins than Commerce's selected BIA margin does not necessarily support Commerce's conclusion that its selected margin was indicative of Hoogovens' sales.

Further, while Commerce also found that the BIA rate was "a transaction involving a substantial commercial quantity[,]" *id.* at 5, Commerce has failed to demonstrate why it found Hoogovens' sales to be substantial, and how Commerce defined "substantial" with regard to Hoogovens' sales. For the court to uphold Commerce's selected margin, Commerce must demonstrate why its selected margin is indicative of Hoogovens' customary selling practices and rationally related to Hoogovens' sales.

Although the court upholds Commerce's criteria, that the margin must be sufficiently adverse and that the margin must be indicative of current conditions, the court cannot uphold Commerce's application of the criteria in selecting a margin indicative of Hoogovens' sales without some reasoned explanation. Accordingly, the court remands the determination to Commerce to provide such an explanation.

### III. Recalculation of VAT

On remand, the Department of Commerce changed its methodology to comport with *Federal–Mogul* when adjusting for taxes the exporting country would have assessed on the merchandise had it been sold in the home market. *Remand Redetermination* at 2.

Pursuant to this court's instructions, Commerce added to the "USP the result of multiplying the foreign market tax rate by the price of the United States merchandise at the same point in the chain of commerce that the foreign market tax was applied to foreign market sales." *Id.* at 2. This calculation differed from Commerce's original methodology, set forth in *Gray Portland Cement and Clinker From Mexico,* 58 Fed.Reg. 25,803, 25,808 (Dep't Comm.1993) (administrative review), which sought to add the actual *amount* of the VAT to the USP. Commerce's methodology pursuant to the Court's direction, rather, applied the *rate* of VAT to the price of the United States merchandise, and then added to the USP the result of that calculation. This methodology, however, created a distortion in the dumping margin as a result of "the multiplier effect," which penalized

foreign producers by inflating existing dumping margins. *Federal–Mogul,* 17 CIT at 1096 & n. 1, 834 F.Supp. at 1394–95 & n. 1.

■ The Court of Appeals for the Federal Circuit has upheld Commerce's original methodology which sought to eliminate the multiplier effect. *Federal–Mogul Corp. v. United States,* 63 F.3d 1572, 1580, 15 Fed. Cir. (T) ——, —— (1995). Commerce has informed the court that it now wishes to return to the tax-neutral methodology approved by the Federal Circuit. Accordingly, the court remands Commerce's determination to permit Commerce to return to its original methodology by adding the amount of the foreign tax, rather than applying the foreign tax rate, in calculating the adjustment needed to account for the VAT.

## Conclusion

Commerce's criteria in defining highest non-aberrant margin is upheld. The court remands Commerce's redetermination to Commerce for Commerce to provide a reasoned explanation to demonstrate how Commerce's selected BIA margin is indicative of Hoogovens' customary selling practices and rationally related to Hoogovens' sales. The court also remands Commerce's VAT adjustments to provide Commerce the option to reapply its original tax-neutral methodology.

## ORDER

This action having been submitted for decision, and upon due deliberation, it is hereby

ORDERED Commerce's Redetermination on Remand is remanded to permit Commerce the option to reapply its original tax-neutral methodology when making adjustments for VAT; and it is further

ORDERED Commerce's Redetermination on Remand is remanded for Commerce to provide a reasoned explanation to demonstrate how Commerce's selected BIA margin is indicative of Hoogovens' customary selling practices and rationally related to Hoogovens' sales; and it is further

ORDERED that the remand results shall be filed with this court within [30] days; and it is further

ORDERED that any party contesting the remand results shall file comments within [30] days of the remand results; and it is further

ORDERED that Commerce may file its response to any comments within [15] days of the filing of the comments.

